45 F.3d 425
 4 A.D. Cases 512, 6 NDLR P 28
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Beverly CARROZZA, Plaintiff-Appellant,
v.
HOWARD COUNTY, MARYLAND, Howard County Government, a body
and corporate and politic, Defendant-Appellee.
EQUAL EMPLOYMENT ADVISORY COUNCIL, Amicus Curiae.
 No. 94-1593.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1994.
Decided Jan. 10, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-93-2955-S).
 ARGUED: Thomas Bowie McCarty, MCCARTY & MCCARTY, Catonsville, MD, for Appellant. Richard Edwin Basehoar, Senior Assistant County Solicitor, Ellicott City, MD, for Appellee. ON BRIEF: Barbara M. Cook, Howard County Solicitor, Louis P. Ruzzi, Senior Assistant County Solicitor, Ellicott City, MD, for Appellee. Douglas S. McDowell, Ann Elizabeth Reesman, MCGUINNESS & WILLIAMS, Washington, DC, for Amicus Curiae.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, NIEMEYER, Circuit Judge, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Beverly Carrozza suffers from bipolar affective disorder, commonly known as manic depression. She claims that her former employer, Howard County, Maryland, discriminated against her in violation of the Americans With Disabilities Act of 1990 ("ADA"). The district court granted summary judgment in favor of the County. We affirm.
 
 
 2
 * In 1983, Carrozza began working for the County as a clerk typist in the Department of Public Works. In 1991, her job was abolished as part of a county-wide reduction in force. Because of her seniority rights, however, she was allowed to transfer to another clerk typist position in the Bureau of Environmental Services. Before accepting the new position, Carrozza received a detailed job description. This document specified that the new job would "require proficiency in word processing using the programs Framework III and especially Word Perfect."[1] Carrozza began working in the Bureau of Environmental Services on April 22, 1991. Although she was given extra time to familiarize herself with WordPerfect using self-guided tutorials, it soon became apparent that she was unable to perform her computer assignments competently. Over the next thirteen months, the County provided numerous training opportunities, both in-house and through outside vendors, to help Carrozza improve her computer skills. But her performance never came close to an acceptable level. In Carrozza's final evaluation, dated June 24, 1992, her supervisor, Howard Saltzman, concluded that her work on the computer was "severely deficient compared to the reasonably expected proficiency level." He noted that her "extremely poor performance" had "a severe, negative effect" on the division's productivity.
 
 
 3
 In addition to her chronic problems on the computer, Carrozza displayed numerous incidents of bizarre and insubordinate behavior. In July 1992, for instance, she dumped a bag of trash on a conference table while Saltzman was attempting to have a meeting. Following this episode, she was hospitalized, under the care of a psychiatrist, for nine days. But the problems persisted. In a memorandum dated April 3, 1992, the director of the Department of Public Works described incidents where she paced and told other employees she was crazy, and behaved in a rude and belligerent manner on the phone and in conversations with Saltzman. On April 6, 1992, she received a written reprimand for insulting Saltzman, refusing to answer work-related questions, and using obscenities. On May 28, 1992, she was suspended for one day for similar misconduct. Finally, on June 25, 1992, the County notified Carrozza of its intent to terminate her.
 
 
 4
 Throughout this time period, Carrozza was treated by her psychiatrist, Dr. Gordon Livingston. She was also evaluated by an independent psychiatrist selected by the County, Dr. Douglas Heinrichs. Both doctors agreed that Carrozza suffered from bipolar disorder, resulting in periodic manic episodes. On several occasions, the County expressed a willingness to confidentially discuss Carrozza's condition with Dr. Livingston to address her problems at work. For many months, however, Carrozza refused to authorize him to contact the County. He did not do so until after termination proceedings were underway.
 
 
 5
 During a pre-termination hearing, Carrozza admitted that she was unable to perform the basic tasks of her job. In a letter dated July 24, 1992, the director of the Department of Public Works advised Carrozza that there were no vacant clerk typist positions available elsewhere in the County.[2] Accordingly, Carrozza was terminated effective August 18, 1992.
 
 
 6
 On June 10, 1993, Carrozza filed a charge of discrimination with the EEOC. After the EEOC issued a right-to-sue letter, Carrozza brought this action, claiming that her termination violated Title I of the ADA, 42 U.S.C. Secs. 12111 et seq., and Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. The district court granted summary judgment in favor of the County. This appeal followed.
 
 II
 
 7
 Summary judgment should be entered if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. We review the district court's grant of summary judgment de novo, viewing reasonable inferences in the light most favorable to Carrozza. Roe v. Doe, 28 F.3d 404, 406-07 (4th Cir.1994).
 
 
 8
 On appeal, Carrozza does not challenge the district court's determination that her Rehabilitation Act claim is time-barred. The sole issue, therefore, is whether summary judgment was properly entered in the County's favor on the ADA claim.
 
 
 9
 Section 102 of the ADA, 42 U.S.C. Sec. 12112, prohibits employment discrimination against "a qualified individual with a disability." To recover under this provision, Carrozza must establish (1) that she is disabled, (2) that she is "qualified," and (3) that the County's termination of her constituted unlawful discrimination. Tyndall v. National Educ. Ctrs., 31 F.3d 209, 212 (4th Cir.1994). Because it is undisputed that Carrozza's mental health condition constitutes a "disability" within the meaning of the ADA, we pass to the second question: whether she is "qualified." The ADA defines a "qualified person with a disability" as someone "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [the person] holds." 42 U.S.C. Sec. 12111(8). Thus, to determine whether Carrozza was "qualified," we must decide:
 
 
 10
 (1) whether she could "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," and (2) if not, whether "any reasonable accommodation by the employer would enable[her] to perform those functions."
 
 
 11
 Tyndall, 31 F.3d at 213 (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir.1993).
 
 
 12
 In this case, the "essential functions" of Carrozza's job included working with the computer and maintaining acceptable standards of conduct within an office environment. It is crystal clear that she exhibited severe deficiencies in both areas. The fact that her problems may have stemmed in part from her mental health condition does not excuse her failure to perform the essential functions of her job. See Little v. F.B.I., 1 F.3d 255, 259 (4th Cir.1993) (employee may be terminated for misconduct, regardless of whether it is attributable to underlying disability).
 
 
 13
 Carrozza argues that she would have been able to perform her essential job functions if the County had made reasonable accommodations for her disability. The statute provides examples of reasonable accommodations, including "job restructuring," "part-time or modified work schedules," and "reassignment to a vacant position." 42 U.S.C. Sec. 12111(9). Reasonable accommodations do not include those steps which require reallocation of "essential job functions," see 29 C.F.R. Sec. 1630.2(o) (Appendix) (1994), or which are shown to impose an "undue hardship" on the employer, see id. Sec. 1630.15(d).
 
 
 14
 Here, the County made exhaustive efforts to accommodate Carrozza's problems. To address her difficulties with the computer, it offered extensive training and practice opportunities. Moreover, in an effort to deal with her erratic behavior, the County provided job counseling and medical leave and offered to work with her psychiatrist. All of these efforts proved fruitless.
 
 
 15
 Despite the significant efforts made on her behalf, Carrozza argues that the County should have made still more accommodations for her disability. She does not, however, identify any specific steps that should have been taken. For example, she proposes without elaboration that the County should have restructured her job duties, provided further computer training, alleviated stress, transferred her to a vacant position, and eliminated job evaluations. This list is little more than a recitation of the statutory examples, with no explanation of how the proposed accommodations should be tailored to her circumstances.
 
 
 16
 The reasonableness of a proposed accommodation is a question of fact which ordinarily should be decided by a jury. Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 833 (4th Cir.1994). In this case, however, the undisputed facts ineluctably lead to the conclusion that Carrozza's proposed accommodations are unreasonable. As noted above, reasonable accommodation does not encompass reallocation of "essential job functions." 29 C.F.R. Sec. 1630.2(o) (Appendix) (1994). Yet the requests for job restructuring, alleviation of stress, and exemption from normal performance reviews would require the County to change the very essence of the clerk typist position. See Pesterfield v. Tennessee Valley Auth., 941 F.2d 437, 442 (6th Cir.1991) (employer not required to provide a "stress-free environment" or immunize employee from legitimate job-related criticism).
 
 
 17
 As for the suggestion that Carrozza should be afforded further computer training, experience dictates that such a step would have precious little chance of success. The County has already provided ample training; it should not be required to pursue steps which would be futile. Finally, the request for reassignment is impracticable because at the time of Carrozza's termination, there were no vacant clerk typist positions elsewhere in the County. See 29 C.F.R. Sec. 1630.2(o) (Appendix) (reassignment required only if individual is qualified and new position is vacant within a reasonable period of time). In sum, Carrozza has failed to articulate any reasonable accommodations not already undertaken by the County.
 
 III
 
 18
 We conclude that there are no material factual disputes and that, as a matter of law, Carrozza is not a "qualified person with a disability" within the meaning of the ADA. Accordingly, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 WordPerfect is a well-known word processing software package
 
 
 [2]
 He offered her a position at the County's wastewater treatment plant, but she declined