Virginia C. WHILLOCK, Plaintiff,

v.

DELTA AIR LINES, INC., Defendant.

Civil Action No. 1:93–CV–2712–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 15, 1995.

Patricia J. Craft, Office of Patricia J. Craft, Atlanta, Georgia, for plaintiff.

William Henry Boice, Kilpatrick & Cody, Atlanta, Georgia, Thomas J. Munger, Delta Air Lines, Inc. Law Department, Atlanta, Georgia, for defendant.

## ORDER

HULL, District Judge.

Plaintiff Virginia C. Whillock brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (1994), against Defendant Delta Air Lines, Inc. This matter is before the Court on Defendant's Motion for Summary Judgment [25–1], and Plaintiff's Motion for Leave to File Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment [31–1].

## I. FACTS

Plaintiff has been an employee of Defendant for twenty-five years. Plaintiff was hired by Defendant as a Junior Key Punch Operator in November, 1969. During her tenure with Defendant, Plaintiff has held the positions of Clerk Typist, Flight Stewardess, Flight Attendant, Junior Cargo Accounting Clerk, Senior Air Freight Clerk, Senior Air Freight Accounting Clerk, and Accountant.

In early 1983, Plaintiff accepted a position as a Reservations Sales Agent. In 1987, when Plaintiff's husband, also an employee of Defendant, was promoted, Plaintiff transferred her employment with Defendant to the Atlanta Reservations Sales Department.

On the morning of March 13, 1992, while taking a reservation in the reservations sales office, Plaintiff experienced an acute exposure to a mixture of water and chemical isopropyl alcohol when an adjacent co-worker sprayed the chemical over the co-worker's work area to disinfect the work area.[1] Plaintiff immediately sustained a severe reaction to the fumes. Plaintiff became weak, dizzy, and had difficulty breathing. Plaintiff's throat swelled and closed, and she began jerking and gasping. Plaintiff was taken in a wheelchair to Defendant's first aid station where oxygen was administered until paramedics arrived.

After this episode, Plaintiff was seen by Dr. Mays, her family physician. In her deposition, Plaintiff testified that by the time she arrived at Dr. Mays's office, all of her episodic symptoms had passed. However, Plaintiff did not return to work until March 30, 1992. Plaintiff explains that her absence was due to her medical condition. Defendant informed Plaintiff that she needed medical documentation for her absences. On March 31, 1992, Plaintiff provided Defendant with a note from Dr. Cole, a physician who practices

---

1. Reservations sales agents operate out of work stations that contain a telephone and a computer terminal. Because several agents may use the same station in different shifts, some agents feel the need to disinfect the work area by spraying it with an alcohol and water mixture.

with Dr. Mays. Dr. Cole's note indicated that Plaintiff could return to work with no restrictions. Nonetheless, Plaintiff worked only 10 days between March 30, 1992 and April 22, 1992.

Plaintiff's acute reaction on March 13 to the exposure of alcohol fumes was followed by another severe reaction on April 22 when she was exposed to the smell of a co-worker's perfume. The exposure triggered immediate symptoms of Plaintiff's feeling very ill, weak, and causing the effects of a severe headache. As her symptoms increased, Plaintiff experienced breathing difficulty, dizziness, and an inability to stand. Plaintiff was assisted by a co-worker to Defendant's nurses' office, where a nurse administered 10 liters of oxygen for thirty minutes.

After the April 22, 1992 incident, Plaintiff visited Dr. Sams, a physician who practices with Dr. Mays and Dr. Cole. At the time of the visit, Dr. Sams noted that Plaintiff "ha[d] no signs of allergic reaction...." Def. Exhibit 29. Dr. Sams indicated that Plaintiff's lungs were "perfectly clear." *Id.* After the April 22, 1992 episode, Plaintiff did not return to work until May 19, 1992.

On April 24, 1992, Defendant asked Plaintiff to provide additional medical documentation of her illness and any restrictions she had. On April 29, 1992, Plaintiff submitted Dr. Cole's letter dated April 27, 1992. Dr. Cole's April 27 note indicated that he conducted a follow-up examination of Plaintiff and that her lungs were "completely clear." Def.Exhibit 32. Dr. Cole's letter also indicated that Plaintiff should be permitted to work shifts when an employee health nurse was available and again concluded that "I feel it is safe for her to return to work at this time." *Id.*

Plaintiff did not return to work until May 19, 1992 and worked for only two days. On May 21, 1992, she called in sick and did not return to work thereafter. Defendant's management made repeated requests upon Plaintiff for medical information about her condition and her "environmental" needs. Plaintiff alleges that when she provided Defendant her medical records in connection with attempts at reasonable accommodation, Defendant made no attempt to accommodate her condition. Defendant counters that Plaintiff never complied with its requests for medical documentation. Further, Defendant alleges that Plaintiff did not answer phone calls or respond to messages left on her answering machine by her supervisors when she was not at work. As a result, on June 12, 1992, Plaintiff was removed from the payroll due to job abandonment, pending receipt of medical documentation on her absences.

On June 12, 1992, Plaintiff visited Dr. Stephen Edelson, a "clinical ecologist." Dr. Edelson sent Ms. Glenda Stock, the Manager of Reservation Sales, a letter dated June 19, 1992 regarding Plaintiff's June 12, 1992 visit. Dr. Edelson stated that based on Plaintiff's description of her medical history, he reached a preliminary diagnosis that she suffered from "chemical sensitivity syndrome." Def.Exhibit H, at Exh. 2. Dr. Edelson performed no testing or examination of Plaintiff and admitted that he did not know what chemicals would trigger a reaction in Plaintiff. Dr. Edelson stated that he would need three or four months to evaluate Plaintiff, but suggested that Plaintiff not return to work because her work area was not chemical free.

According to Dr. Edelson, the exposure to the chemical irritant, on March 13, 1992, which resulted in debilitating symptoms affecting Plaintiff's neurological, respiratory and immune systems, was the induction or first stage of a two staged phenomenon known as Multiple Chemical Sensitivity Syndrome. Dr. Edelson opines that the relatively high level chemical exposure Plaintiff experienced on March 13, 1992 affected Plaintiff's susceptibility to subsequent low level exposures. As a result, Plaintiff now experiences symptoms such as respiratory difficulty, dizziness, rashes, chronic exhaustion, and severe headaches, which are triggered by low levels of chemicals, such as those found in perfume, paint, smoke, and car exhaust. This, according to Dr. Edelson, explains why Plaintiff had a reaction to the smell of a co-worker's perfume on April 22, 1992.

While Dr. Edelson's diagnosis was contrary to the diagnoses of Dr. Cole (who released Plaintiff to return to work) and other physicians who had examined Plaintiff, Defendant returned Plaintiff to the payroll, even though Plaintiff did not return to work. Assistant Reservations Sales Manager Norm Andrews requested Plaintiff to release her medical records since the March 13, 1992 episode so that Defendant could determine if Plaintiff had a reason to refuse to return to work. Plaintiff subsequently released those records.

On September 24, 1992, after exhausting her paid sick leave, Plaintiff applied for short-term disability benefits through the Delta Family Care and Disability Survivorship Plan ("the Plan"). Under the terms of the Plan, an employee seeking disability benefits may be required to submit to an independent medical examination ("IME") to verify the claim of a disability. Because the opinion of Plaintiff's examining physician, Dr. Cole, conflicted with that of Dr. Edelson, Plaintiff was required to undergo an IME.

Plaintiff's IME was to be conducted by Dr. Elsie Morris on October 19, 1992. Although Plaintiff appeared for the examination, the examination was not conducted. According to Plaintiff, Dr. Morris was rude and wanted to subject Plaintiff to tests Plaintiff feared would endanger her health. According to Defendant, the examination was not conducted because Plaintiff refused to cooperate with Dr. Morris. At any rate, notwithstanding the fact that Plaintiff never underwent an IME, her short-term disability benefits continued until they expired on October 31, 1992.

On November 5, 1992, Plaintiff applied for long-term benefits under the Plan. Pursuant to the Plan, an employee is entitled to long-term benefits only if that employee is unable to perform any job, including part-time work. Plaintiff contended that she was totally prevented from performing any job. On November 28, 1992, the Plan denied Plaintiff's application for long-term benefits, because the medical documentation she submitted from Dr. Edelson stated that Plaintiff was able to perform some work.

Pursuant to Defendant's normal practice, it allowed Plaintiff to appeal the denial of her claim before requiring her to return to work. Plaintiff appealed to the Administrative Subcommittee the Plan's denial of her application for long term benefits. On January 28, 1993, the Administrative Subcommittee denied her appeal. Plaintiff did not appeal to the Administrative Committee. Thus, Defendant attempted to return Plaintiff to work.

On March 4, 1993, Plaintiff was notified that, pursuant to Defendant's policy, she was to contact her manager to arrange for her return to work. At this point, Defendant learned that Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 1, 1993. Plaintiff's charge alleges that she was denied both long-term disability benefits and a reasonable accommodation in violation of the ADA.

At the time Plaintiff filed this charge, Plaintiff was still contending (via the long-term disability process) that she was completely unable to perform any job. She had not requested accommodation because she claimed none was possible. However, Delta has accommodated at least six employees requesting accommodation on the basis of an allergy or sensitivity to one or more substances in the work place. Nonetheless, Plaintiff contended that she could not be accommodated and that she could not perform any job. Plaintiff did not address the possibility of returning to work until her application for long-term disability benefits were denied and she abandoned the appeals process.

On March 23, 1993, after filing her disability discrimination charge, Plaintiff contacted Laura Picel, the Regional Manager for Delta reservations. During this conversation, Plaintiff stated that she was allergic to chemicals in the air, such as perfume, exhaust, and cleaning supplies, and that her special needs would have to be addressed prior to her return to work. Ms. Picel advised Plaintiff that in order for Defendant to assess her needs in terms of job placement, she would need to submit an accommodation request form and medical documentation identifying her medical condition and supporting any accommodation she was requesting.

On April, 19, 1993, Plaintiff submitted an accommodation request form to Ms. Picel. This form was forwarded to the Equal Opportunity Department for processing. In her request, Plaintiff stated that her disability was "Environmental Chemical Sensitivity." Plaintiff requested to be allowed to work at home or to have a safe area at work.

In support of her request for accommodation, Plaintiff attached two medical reports. One from Dr. Cole, dated June 4, 1992, indicated that Plaintiff was able to return to work, but that she should avoid strong fumes. Plain.Exhibit P-11, at 68. The other report, dated August 18, 1992, from Dr. Edelson, stated the Plaintiff suffered from severe chemical sensitivity and would need to be off work while her condition stabilized.

Plaintiff's accommodation request was reviewed by Mr. Davie, who was responsible for investigating accommodation requests and making reports and recommendations to Defendant's Director of Equal Opportunity. Upon reviewing the medical information relating to Plaintiff, Mr. Davie noted that he needed the assistance of a medical consultant. Mr. Davie's concern was the fact that Plaintiff sought a "safe" area in the work place, but that Plaintiff admitted that she did not know what was unsafe in the work place.

Mr. Davie contacted Dr. William Whaley for assistance. Defendant's Equal Opportunity Department often consults with Dr. Whaley regarding accommodation requests. After reviewing Plaintiff's records, Dr. Whaley determined that he needed additional information, so he contacted Dr. Edelson. However, Dr. Edelson refused to speak with Dr. Whaley unless Dr. Whaley paid him $200 per hour. Def.Exhibits 49, 50. On June 1, 1993, Dr. Whaley communicated to Mr. Davie his inability to obtain information about Plaintiff's medical condition from Dr. Edelson.

On July 12, 1993, Defendant wrote Plaintiff a letter explaining that it concluded the accommodation review process based upon insufficient medical information. Defendant informed Plaintiff that it was her burden to support her accommodation request with appropriate documentation, and that Defendant would reconsider Plaintiff's accommodation request "if [her] doctor wishes to cooperate at some point in the future." Def.Exhibit 51. Plaintiff was informed that if she was unable to provide additional medical information, that she should return to work.

On August 13, 1993, Plaintiff filed a second charge of discrimination with the EEOC, alleging that Defendant failed to reasonably accommodate her. The EEOC issued Plaintiff right to sue letters on this and the previous charge. On November 11, 1993, Plaintiff filed this Complaint under the ADA.

On May 11, 1994, subsequent to Plaintiff's filing this Complaint, Plaintiff was examined by Dr. Grace Ziem, an expert on the subject of chemical sensitivity. According to Plaintiff, despite Dr. Ziem's best efforts to make her clinical office as non-toxic as possible, during the examination, Plaintiff had a severe reaction. Based upon Dr. Ziem's review of Plaintiff's medical records, her medical history, physical examination, and laboratory tests, Dr. Ziem concurred with Dr. Edelson's diagnosis of multiple chemical sensitivities. Dr. Ziem also concluded that Plaintiff is unable to perform job activities outside her home, due to work place exposures.

After Plaintiff's visit with Dr. Ziem, Defendant received a letter from Dr. Ziem, dated June 22, 1994. In Dr. Ziem's letter, she outlined her analysis of Plaintiff's condition and concurred with Dr. Edelson's diagnosis that Plaintiff suffered from Multiple Chemical Sensitivity Syndrome. Dr. Ziem's letter concluded that, in her opinion, Plaintiff could not be accommodated in Defendant's work place.

Notwithstanding Dr. Ziem's letter, neither Dr. Ziem nor Dr. Edelson has outlined to which agents Plaintiff is allergic. In his deposition, Dr. Edelson admitted that the only way to determine exactly to what chemicals Plaintiff is sensitive is to conduct a "booth challenge" test whereby Plaintiff would be placed in a controlled environment and selectively exposed to certain chemicals while being medically monitored. In order to determine the exact nature of Plaintiff's alleged sensitivities and the need for any accommodation, Defendant offered to pay for Plaintiff to undergo testing. However, Plain-

tiff declined Defendant's offer. Accordingly, the only known agents to which Plaintiff is sensitive are alcohol and perfume.

Plaintiff no longer contends that she can be accommodated at work. Plaintiff now contends that she can be accommodated only by allowing her to work at home. Plaintiff performs numerous other activities outside her home. Plaintiff regularly goes grocery shopping, visits her doctor's offices, visits her mother-in-law at least four times weekly, and dines out an average of once a week. Plaintiff also has attended many hours of depositions at Defendant's offices.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

■ Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment as follows: courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–09 (11th Cir.1991). Unless the movant for summary judgment meets its burden under Federal Rule of Civil Procedure 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion. *Clark,* 929 F.2d at 607–08.

■ While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. Tech-South, Inc.,* 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."

*Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

■ Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court interpreted Federal Rule of Civil Procedure 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

### B. REQUIREMENTS TO SUSTAIN AN ADA CLAIM

■ The ADA prohibits an employer from discrimination based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112 (1994). In order to state a claim under the ADA, Plaintiff first must show that she is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. § 12112 (1994); *Jackson v. Veterans Administration,* 22 F.3d 277, 278 (11th Cir.1994); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir. 1993). A qualified individual with a disability is an individual who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...." 42 U.S.C. § 12111(8) (1994); 29 C.F.R. Pt. 1630.2(m) (1993); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). To be a "qualified individual with a disability," Plaintiff must first show that she has a disability, and second that she can perform her work with a reasonable accommodation by her employer. Plaintiff contends that her disability is Multiple Chemical Sensitivity Syndrome

and that she can perform the essential functions of her job if Defendant allows her the accommodation of working at home.

Defendant moves for summary judgment primarily on two grounds. First, Defendant contends that Plaintiff has offered no evidence that she has a "disability" as defined by the ADA. Second, Defendant argues, assuming *arguendo* that Plaintiff has a disability, Plaintiff is not a "qualified person with a disability" because Plaintiff cannot perform the essential functions of her job at home and Plaintiff's requested accommodation is not reasonable as a matter of law.

### C. *PLAINTIFF'S CLAIM OF DISABILITY*

The ADA defines a disability as an impairment which substantially limits a major life activity. 42 U.S.C. § 12102(2)(A) (1994); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir.1995). Plaintiff alleges that she suffers from Multiple Chemical Sensitivity Syndrome ("MCSS"), an impairment which allegedly significantly limits her ability to breathe. Defendant counters that MCSS is not identified in the text of the ADA, or the regulations accompanying the ADA, as a *per se* disability, and that, indeed, it is the subject of debate among members of the medical community.

■ Defendant's contention that Plaintiff cannot show that she has a disability because MCSS is not a *per se* disability under the ADA and is debated in the medical community does not terminate the Court's inquiry. The ADA mandates a case by case determination of whether a plaintiff-employee's condition is so severe that it substantially impairs a major life activity. *See generally Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir.1995). The regulations flesh out this case by case analysis regarding environment contaminants, as follows:

> [I]ndividuals may be sensitive to environmental elements or to smoke but their sensitivity will not rise to the level needed to constitute a disability. For example, their major life activity of breathing may be somewhat, but not substantially impaired. In such circumstances, the individuals are not disabled and are not enti-

tled to the protection of the statute despite their sensitivity to environmental agents.

> In sum, the determination as to whether allergies to cigarette smoke, or allergies or sensitivities characterized as environmental illness are disabilities covered by the regulation must be made using the same case-by-case analysis that is applied to other physical or mental impairments.

28 C.F.R. Pt 35, App. A, at 446 (1993).

Plaintiff has presented expert medical evidence from Dr. Edelson and Dr. Ziem that Plaintiff suffers from MCSS. According to both doctors, because of her condition, Plaintiff is hypersensitive to a number of chemicals and chemical odors, and exposure to them severely impairs her normal breathing. Plaintiff had a violent reaction to chemical agents in Defendant's work place on two separate occasions, on March 13, 1992, and again on April 22, 1992. On both of these occasions, Plaintiff became weak and experienced difficulty breathing. Plaintiff had to be administered oxygen after both episodes.

Defendant forwards several arguments in support of its contention that Plaintiff has not shown that she has a disability as defined in the ADA. First, Defendant attempts to undermine the opinions of Plaintiff's doctors by stressing the Plaintiff was never examined by these doctors and that they made diagnoses concerning Plaintiff's condition solely from Plaintiff's describing her medical history and the allergic reactions she had to specific substances. Second, Defendant highlights that Plaintiff's doctors failed to pinpoint exactly to what chemical agents Plaintiff is allergic. The only agents of which it is confirmed that Plaintiff is allergic is alcohol and perfume. Third, Defendant points out that two doctors that actually examined Plaintiff found that Plaintiff's lungs were clear. Finally, Defendant notes that Plaintiff is able to perform numerous activities, other than work, outside her home, like grocery shopping, visiting her mother-in-law, and dining out once a week.

Although the evidence Defendant presents may fairly be said to strongly counter certain evidence Plaintiff submits on the issue whether she suffers from a disability, it is the

charge of this Court to determine only whether Plaintiff has presented sufficient evidence to create a jury issue whether she has a disability. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–09 (11th Cir.1991). In other words, the Court must determine whether, viewing all evidence in the light most favorable to Plaintiff, a jury could find that Plaintiff has a disability. Fed.R.Civ.P. 56; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). The Court finds that Plaintiff has presented sufficient evidence to create a triable issue regarding whether she has a disability as defined under the ADA.

### D. *PLAINTIFF'S ACCOMMODATION REQUEST*

In addition to establishing her "disability," Plaintiff also must show that she is an "otherwise qualified person" with a disability as defined by the ADA. To satisfy this requirement, Plaintiff must show that she can perform the essential functions of her job with or without reasonable accommodation. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). Plaintiff concedes that she cannot perform the essential functions of her job without reasonable accommodation. The issue in this case becomes whether Plaintiff can perform the essential functions of her job with any accommodation, and if so, whether that accommodation is reasonable. *Vande Zande v. State of Wisconsin Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir.1995).

■ Under the ADA, Plaintiff must offer Defendant a suggestion of a reasonable accommodation which would allow her to perform the essential functions of her job. *See generally* 29 C.F.R. Pt. 1630, App., at 416–17 (1993); *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993) (discussing analogous provisions of the Rehabilitation Act).[2] Plaintiff offers only one suggested accommodation. Plaintiff contends that the only accommodation which would allow her to perform the essential functions of her job is if she is allowed to work at home. The Court addresses (a) whether plaintiff is an "otherwise qualified individual with a disability" if the only accommodation that would address her disability is allowing her to work at home, and (b) whether allowing Plaintiff to work at home is a "reasonable accommodation" under the ADA.

   1. *Plaintiff is not an "Otherwise Qualified Person with a Disability" Who can Perform the Essential Functions of her Job*

■ To be an "otherwise qualified individual with a disability," Plaintiff must show that she is an individual otherwise qualified to perform the essential functions of her job. An individual is "otherwise qualified" for her position if she is able to meet all of a [job's] requirements in spite of [her] "handicap." *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). *See also Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). The term essential functions means the fundamental job duties of the employment position. 29 C.F.R. Pt. 1630.2(n)(1) (1993). A job function is essential if it bears a more than marginal relationship to the job at issue. *Carrozza v. Howard County*, 1995 WL 8033, 1995 U.S.App. LEXIS 387, No. 94–CV–1593 (4th Cir. Jan. 10, 1995). Although defendant-employers cannot recast what the essential functions of a job are for ADA purposes, employers do have the right to define the essential functions of a job. *Johnston v. Morrison, Inc.*, 849 F.Supp. 777, 778 (N.D.Ala.1994); *see* 42 U.S.C. § 12111(8) (1994); 29 C.F.R. Pt. 1630.2(n)(3)(i) (1993). One part of the inquiry in determining whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the alleged function. 29 C.F.R. Pt. 1630, App. 1630.2(n) (1993); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir.1995).

---

**2.** The ADA specifically provides that it shall be construed consistent with the Rehabilitation Act of 1973, 29 U.S.C. § 793 (1994), and the regulations issued pursuant to the Rehabilitation Act. *See* 42 U.S.C. § 12201(a) (1994).

In this case, Defendant's Reservations Sales Agents perform a variety of tasks, including receiving telephone calls from Defendant's customers, making reservations, and answering any questions customers may have regarding schedules and fares utilizing Defendant's computer system. Defendant's Reservations Sales Agents work in a station consisting of a phone equipped with external and internal communication facilities and have access to Defendant's computer network and confidential database, and a computer terminal. Defendant staffs its reservations sales offices to insure proper customer service. When agents are absent or away from their work stations, customer calls inevitably are placed on hold for longer periods of time, or worse, remain unanswered. Such delays cause customers to contact another airline for their travel needs, thus causing Defendant to lose revenue.

Defendant does not have any Reservations Sales Agents working out of their homes for several reasons. A reservations mini-office at someone's home prevents that computer terminal from being used other than during that individual's work hours. Defendant's reservations offices and computer terminals are used by employees on shifts around the clock every day of the year. Moreover, Defendant's Reservations Sales Agents necessarily have access to a large amount of Defendant's classified and confidential information. The security of this information could not be maintained in a Reservations Sales Agent's home.

Reservations Sales Agents do not work in an isolated unsupervised environment. Defendant provides extensive in-person and on the job training, monitoring, evaluating and counseling that are essential to the proper functioning of a Reservations Sales Agent job. This in-person interaction is necessary to ensure that this critical sales position is performed properly. Supervisors could not properly monitor and evaluate the performance of an off-site sales agent. Most jobs involve team work under supervision rather than solitary unsupervised work. Plaintiff's job does not consist of any solitary unsupervised work. Teamwork, or even work requiring supervision, cannot be performed at home without a substantial reduction in the quality and productivity of the employee's performance.

The need for in person training, monitoring, evaluating, and counseling, which are essential to perform the job of a Reservation Sales Agent, as well as the requirement of security for Defendant's proprietary equipment make reasonably regular attendance an essential function of Plaintiff's job. Andrews Aff., ¶¶ 6–8.[3] *Cf. Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir.1994) (plaintiff was not "otherwise qualified" for his position where he was absent on a "sporadic, unpredictable basis"); *Tyndall v. National Education Centers,* 31 F.3d 209, 213 (4th Cir. 1994) ("[I]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis."); *Larkins v. CIBA Vision Corp.,* 3 AD Cases (BNA) 715, 725, 858 F.Supp. 1572, 1584 (N.D.Ga.1994) ("[R]egular attendance and the ability to perform work are an essential function of any position under the Rehabilitation Act."); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn. 1986), *aff'd,* 831 F.2d 298 (6th Cir.1987) ("[O]ne who does not come to work cannot perform any of his job functions, essential or otherwise."). If Plaintiff is unable to be present at her place of employment, Plaintiff is unable to fulfill some of the essential functions of her job.

---

**3.** Plaintiff's Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment contends that the Court should not allow Defendant to rely on Mr. Andrews's affidavit, but has filed no Motion to Strike that affidavit. In Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Plaintiff objected to facts upon which Defendant relied on Mr. Andrews's affidavit and therein moved to strike the affidavit. However, Plaintiff never filed a separate Motion to Strike, and never supported the "motion" contained in her Response to Defendant's Statement of Undisputed Material Facts with any authority or supporting affidavits. Accordingly, the Court does not consider Plaintiff's "motion." In any event, the Court finds that Mr. Andrew's affidavit is proper, does not violate discovery orders, and should be considered.

■ "The ADA ... does not require [a d]efendant to eliminate an essential function of the position ... to accommodate [the] plaintiff." *Larkins,* 3 A.D. Cases at 724, 858 F.Supp. at 1583; 29 C.F.R. Pt. 1630.2(*o*) (1993). Nonetheless, the elimination of an essential function is exactly what Plaintiff seeks in this case. The ADA does not require that Defendant abandon the essential function of attendance at the job to accommodate Plaintiff. If the only accommodation which would allow Plaintiff to perform the essential functions of her job is allowing her to work at home, Plaintiff is not an "otherwise qualified individual with a disability" under the terms of the ADA. Since Plaintiff contends she can work only at home, the Court finds that Plaintiff then can not fulfill some of the essential functions of her job and is not a "qualified individual with a disability" under the ADA. *Myers v. Hose,* 50 F.3d 278, 282 (4th Cir.1995).

### 2. *Plaintiff's Suggested Accommodation is Unreasonable as a Matter of Law*

■ Plaintiff has presented some evidence that she can perform some of the responsibilities in the job description of a Reservations Sales Agent if allowed to work at home. Alternatively, even assuming *arguendo* that Plaintiff can perform the essential functions of her job if "accommodated" by allowing her to work at home, Plaintiff is not entitled to relief on her ADA claim because such an accommodation is not reasonable as a matter of law.

Under the ADA, once an employer is on notice that an employee is disabled, that employer is obligated to "reasonably accommodate" that employee's disability. 42 U.S.C. § 12112(b)(5)(A) (1994). The use of the word "reasonable" as an adjective for the word "accommodate" connotes that an employer is not required to accommodate an employee in any manner in which that employee desires. The term "reasonable," as it is employed in the ADA, would have no meaning if employers were required to provide employees the maximum accommodation or every conceivable accommodation possible. 29 C.F.R. Part 1630, App., at 416 ("the employer providing the accommodation has the ultimate discretion to choose between effective accommodation or the accommodation that is easier to provide."). *See Vande Zande v. State of Wisconsin Dept. of Administration,* 851 F.Supp. 353, 61, 362 (W.D.Wis. 1994) ("reasonable accommodation does not require an employer to provide every accommodation that a disabled employee requests".), *aff'd,* 44 F.3d 538 (7th Cir.1995). In other words, Plaintiff is not entitled to the accommodation of her choice, but only to a *reasonable* accommodation.

■ The problem with Plaintiff's contention here is that she seeks an unreasonable accommodation from Defendant under the facts of this case. Further, Plaintiff implicitly attempts to recast this unreasonable accommodation as reasonable because, as Plaintiff argues, it is the only accommodation which will allow her to perform the essential functions of her job. However, that an unreasonable accommodation is the only accommodation that would allow a plaintiff to perform her job does not make that unreasonable accommodation reasonable. *See Vande Zande,* 44 F.3d at 542 (rejecting the argument that reasonableness is solely a function of what accommodation would be efficacious for a specific plaintiff). If reasonableness were given this meaning, it would be difficult to fathom, on the facts here, what would be an unreasonable accommodation. Accordingly, even if, as Plaintiff argues, allowing her to work at home is the only accommodation that would satisfy her disability, the Court is still required to determine whether Plaintiff can show that the accommodation she requests is reasonable. The question becomes whether any reasonable jury could find that allowing Plaintiff to work at home is a reasonable accommodation under the ADA.

The Seventh Circuit faced this same issue recently in *Vande Zande v. State of Wisconsin Dept. of Admin.,* 44 F.3d 538 (7th Cir. 1995). In *Vande Zande,* the plaintiff argued that the defendant Department of Administration violated the ADA in not accommodating her by allowing her to work at home. In delivering the opinion of the unanimous panel about the plaintiff's request to work entirely at home, Chief Judge Posner reasoned that

"[n]o jury, however, could in our view be permitted to stretch the concept of 'reasonable accommodation' so far." *Id.* at 544. The Seventh Circuit noted that most jobs, like Plaintiff's here, involve teamwork under supervision rather than unsupervised work, and that team work cannot be performed at home without a substantial reduction in the quality and productivity of the employee's performance. *Id.*

This is not to say that there is no conceivable employment with any employer anywhere for which working at home is a reasonable accommodation to an "otherwise qualified person with a disability." As stated by Judge Posner, "as with any generalization about so complex and varied an activity as employment, there are exceptions, but it would take a very extraordinary case for the employee to create a triable issue of the employer's failure to allow the employee to work at home." *Vande Zande,* 44 F.3d at 545.

For the reasons discussed earlier, the Court finds that no reasonable jury, under the particular facts of this case, could find that allowing Plaintiff to work at home, as a Reservations Sales Agent for Defendant, is a reasonable accommodation. *See Vande Zande v. State of Wisconsin Dept. of Admin.,* 44 F.3d 538, 544 (7th Cir.1995) ("Generally, ..., an employer is not required to accommodate a disability by allowing the disabled worker to work, by [herself], without supervision, at home."). *See also Tyndall v. National Education Centers,* 31 F.3d 209, 213–14 (4th Cir.1994) (holding that allowing plaintiff to work at home was not a reasonable accommodation); *Law v. United States Postal Service,* 852 F.2d 1278 (Fed.Cir.1988) (per curiam) (same).

In conclusion, if Plaintiff can work only at home, she cannot perform some of the essential functions of her job and thus is not an otherwise qualified individual with a disability as defined by the ADA. Alternatively, even if Plaintiff can perform the essential functions of her job, the accommodation Plaintiff requests is unreasonable as a matter of law.[4]

For the forgoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

### III. CONCLUSION

The Court GRANTS Plaintiff's Motion for Leave to File Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment [33–1]. The Court GRANTS Defendant's Motion for Summary Judgment [25–1].

The Clerk is directed to enter final judgment in favor of Defendant on Plaintiff's ADA claim.

It is SO ORDERED.

---

4. Assuming *arguendo* that allowing an employee to work at home was a reasonable accommodation in certain contexts, Plaintiff arguably has not presented sufficient evidence to create a jury issue whether such an accommodation is required on these facts. Delta stresses that Plaintiff regularly goes grocery shopping, visits her doctor's office, visits her mother-in-law at least four times weekly, and goes out to eat an average of once a week. Whillock deposition, at 158–60, 161–62, 163; Deposition of Meredith Whillock, at 33, 44, 96–98, 102, 104. Plaintiff also has attended many hours of depositions in this case at Delta's offices, and the offices of Delta's attorneys. This significantly undermines Plaintiff's contention that she can be accommodated only at home.