**Thelma Elizabeth TREADWELL,
Plaintiff,**

v.

**DOW–UNITED TECHNOLOGIES,
et al., Defendants.**

**Civil Action No. 95–D–598–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 12, 1997.

Charles B. Paterson, Justice D. Smyth, III, Montgomery, AL, for Plaintiff.

David J. Middlebrooks, Steven Michael Stastny, Brent L. Crumpton, Birmingham, AL, for Defendants Dow, Vinson, Rittenberry and Jones.

Armstead Lester Hayaes, III, Montgomery, AL, for Defendant Vinson.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are the following motions: defendants' motion for summary judgment filed June 14, 1996; defendants' motion filed September 5, 1996, to strike a portion of the affidavit of Andrew M. Brown, M.D.; defendants' motion filed September 5, 1996, to disregard the affidavits of Andrew M. Brown,

M.D., and plaintiff Elizabeth Treadwell as "sham affidavits"[1]; plaintiff's motion filed January 15, 1997, to amend the contentions of the pretrial order or, in the alternative, the complaint; and defendants' supplemental motion for summary judgment filed January 21, 1997.[2] Within this memorandum opinion, the court will take up each of these motions. With regard to the motion for summary judgment, however, the court will only address plaintiff's claim brought under the Americans with Disabilities Act; defendants' motion for summary judgment as to plaintiff's other claims, all pendent state claims, will be addressed in a separate memorandum opinion and order.

## JURISDICTION

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because plaintiff alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201 et seq. Plaintiff also brings state law claims arising from the same transaction and occurrence as the alleged federal deprivation; therefore, the court may assert supplemental jurisdiction over plaintiff's state law claim. See 28 U.S.C. § 1367(a). Personal jurisdiction and venue are uncontested.

## FACTUAL BACKGROUND

In the spring of 1993, plaintiff began her employment with defendant Dow–United Technologies Composite Products, Inc. ("Dow–UT"). After training for four weeks to work at DOW–UT's plant in Tallassee, Alabama, Dow–UT assigned plaintiff to its plant in Montgomery, Alabama, where helicopter parts are assembled. Specifically, the plant designs, manufactures and markets advanced composite components for aerospace and defense markets. Plaintiff was placed in the Bonding Department, where she was required to handle and work with a low densi-

1. Defendants' motion to disregard was incorporated as part of their reply memorandum to plaintiff's opposition to the motion for summary judgment.

2. After allowing plaintiff to amend her complaint during the latter stages of these proceedings, the court entered an order on November 18, 1996, extending scheduling deadlines so as to permit defendants to file dispositive motions on the amended portions of the complaint. The amendment added allegations that defendants made fraudulent statements in a reckless manner and that they withheld information relating to their lack of knowledge concerning toxic materials. The court did not, however, grant the parties leave to refine and supplement their already existing summary judgment arguments.

ty, syntactic epoxy system known as Epocast 1652–A/B.[3]

On May 12, 1993, while drilling and sanding electrical boxes that contained the epoxy system, plaintiff experienced an allergic reaction; she experienced a burning sensation on her skin, which had become red and irritated, her tongue began to swell and her throat and chest areas felt burned and swollen. She was diagnosed later that day as having an "allergic reaction to an unknown substance" and instructed to avoid the offending agent. In response, Dow–UT provided plaintiff with impervious gloves, a protective lab coat with sleeve extensions, a full face shield and a dust mask to wear while she worked with the electrical boxes.

Plaintiff experienced another allergic reaction on May 27, 1993, when she was once again drilling electrical boxes. Again she complained that her skin was red and burned, her tongue swollen, and her throat and chest constricted. Moreover, she experienced trouble breathing and began to feel faint. Once again, plaintiff was instructed by her physician to avoid the offending agent. After returning to work on May 28, 1993, plaintiff refused to return to the area where there was Epocast dust. In response, DOW–UT moved plaintiff to the "tip caps" department, the plant area farthest away from the bonding department.

On June 24, 1993, plaintiff suffered yet another allergic reaction, gagging and coughing mucous. Plaintiff reported to the plant nurse who administered medication to plaintiff, and, plaintiff was able to return to work after approximately 20 to 30 minutes. Upon returning to the tip caps department, plaintiff wore a dust mask and worked with it in place for the balance of the day. At the end of plaintiff's shift on June 25, 1993, Dow–UT's personnel manager, Wayne Jones, terminated plaintiff's employment, explaining to her that while Dow–UT was satisfied with plaintiff's work, she was "too nervous" and made the other employees nervous. During the exit interview, plaintiff asserted that she was being terminated due to her allergic reactions, but Jones denied this, telling her that she simply was not a "good fit" with the aerospace industry.

Plaintiff has since been diagnosed as suffering from an allergy to phenol and formaldehyde, which are both found in Epocast. Her current physician, Dr. Andrew M. Brown ("Brown"), contends that plaintiff continues to suffer from the long term effects of repetitive chemical exposures which occurred during her employment at Dow–UT and that these exposures have resulted in plaintiff's developing multiple sensitivities to other antigens in her environment. Plaintiff currently works as a secretary but must shut the doors to her office and use a special air ventilator in her office. Similarly, at home, she must shut the doors to her bedroom and use a special air ventilator. Plaintiff now alleges pursuant to the ADA that at the time of her termination she was a qualified individual with a disability who, with reasonable accommodation, was capable of performing the essential functions of her employment. She alleges that Dow–UT refused to make reasonable accommodations for her disability and discharged her because of that disability.

## DISCUSSION

Before turning to defendants' motion for summary judgment on plaintiff's ADA claim, the court will first take up the various motions by the parties to strike, disregard and amend.

### A. Motion to Strike Portion of Affidavit of Andrew M. Brown, M.D.

█ In opposition to defendants' motion for summary judgment, plaintiff has submitted the affidavit of her current physician, Dr. Brown. Complaining that Brown's affidavit

---

**3.** "Epocast is a product manufactured by Ciba–Geigy's Furane Aerospace Products Division and is used, among other things, as a core fill for metal skins, adding stiffness and strength to the fabricated parts such as helicopter rotor blades." Pl.'s Compl. at ¶ 14. "Both Epocast 1652–A and 1652–B have been found to cause serious eye and skin burns, irritations and allergic skin reactions.

Contact with eyes, skin, mucous membranes and clothing must be avoided. At a minimum, individuals handling the material are required to use eye protection and impervious gloves. Vapor, mist or particles from the materials must not be inhaled, and proper ventilation is required for the safe use and handling of the material." Pl.'s Br. (6/23/96) at 3.

does not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure[4], defendants now seek to have a portion of Brown's affidavit stricken. A "summary judgment is supposed to be a substitute for trial, and an affidavit in support of a Rule 56 motion is a substitute for live testimony." *Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 152 (7th Cir.1992). Accordingly, testimony proffered in an affidavit must comport with Rule 56(e). In the instant action, Dr. Brown purports to testify on behalf of plaintiff as an expert, and as such, his testimony is governed by Federal Rule of Evidence 702.[5] While Rule 702 establishes a liberal policy of admissibility, the court notes that it has broad discretion in determining whether or not to admit or exclude Brown's testimony. *See Polston v. Boomershine Pontiac–GMC Truck, Inc.*, 952 F.2d 1304, 1309 (11th Cir.1992).

In his affidavit, Brown describes his credentials as well as plaintiff's course of treatment. Brown attests to his belief that plaintiff suffers from multiple chemical sensitivity as a proximate result of multiple exposures to chemicals during her term of employment at Dow–UT and that she suffered from this condition at the time she was terminated from Dow–UT. Defendants object, however, to the last two paragraphs of Brown's affidavit, wherein he challenges the findings of the vocational consultant who estimated plaintiff's overall maximum vocational loss to be 12%. Couching his findings in terms of his personal observation of plaintiff and his professional judgment, Brown explains in these last two paragraphs that the vocational consultant incorrectly analyzed plaintiff's condition and underestimated the number and types of jobs from which plaintiff is restricted due to her multiple chemical sensitivity.

Specifically, defendants argue that Brown's assessment of the vocational consultant is insufficient pursuant to Rule 56(e) of the

Federal Rules of Civil Procedure because he fails to provide any foundation as to "plaintiff's vocational training, the geographical area to which plaintiff has access and the number and types of jobs demanding similar training from which plaintiff would be disqualified." Defendants also argue that Brown has failed to refer to any study, data or other reference sources which would speak to the relevant occupational environments or jobs in the relevant geographical area to which plaintiff has access with or without her disability. The court finds defendants' argument that Brown is not competent to testify in this regard persuasive and that Brown's testimony in paragraphs 13 and 14 is due to be stricken.

Without some foundation as to how he reached his conclusions, the court is unable to deem Brown's statements as more than simple conclusory statements. For this same reason, the court is unable to conclude that Brown is qualified to testify regarding the vocational consultant's findings. Although Brown is a member of the American College of Occupational Medicine and the American Academy of Environmental Medicine, the court is not convinced from the information Brown provided in the affidavit that he is qualified to testify as to the methods and classifications used by the vocational consultant. *See, e.g., Polston*, 952 F.2d at 1308–09 (holding that a mechanical engineer with no medical training could not testify as to medical probabilities but could testify as to engineering probabilities). This finding, however, should not be construed as precluding Brown from offering such testimony at trial, provided a more thorough foundation is laid by plaintiff.

B. *Motion to Disregard Plaintiff and Brown Affidavits*

■ In their reply to plaintiff's opposition brief, defendants accuse both plaintiff and

---

**4.** Rule 56(e) reads in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

**5.** Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Brown of equivocating and producing "sham" affidavits. Specifically, defendants claim that prior to producing the affidavits, plaintiff and Brown agreed that plaintiff could not and would not work on Dow–UT's production floor due to her alleged disability. However, in his affidavit, Brown states only that plaintiff cannot return to Dow–UT "under the same or similar conditions to those in which she suffered the chemical exposure." Brown Aff. at 7. Similarly, plaintiff states in her affidavit that she would not consider returning to Dow–UT unless she "was properly and adequately insulated or protected from Epocast, formaldehyde and phenol." Pl.'s Aff. at 5. Defendants argue that because these affidavits appear to contradict plaintiff's and Brown's previous testimony, the court should find them to be "sham" affidavits and disregard them.

The Eleventh Circuit has made it clear that a party cannot avoid summary judgment on the basis of a "sham" affidavit. *See Van T. Junkins and Associates, Inc. v. United States Industries, Inc.*, 736 F.2d 656 (11th Cir.1984). The task before the court is to distinguish "discrepancies [between affidavits and previous testimony] which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). The *Tippens* Court went on to state "[a]n affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Id.* at 954 (quoting *Van T. Junkins*, 736 F.2d at 657). Only those affidavit statements which are "inherently inconsistent" with earlier deposition testimony should be stricken. *See W.C. Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986); *see also, Moore v. Beneficial Nat'l Bank U.S.A.*, 876 F.Supp. 1247, 1253–54 (M.D.Ala.1995).

The court notes that defendants do not claim that Brown is seeking to contradict previous testimony,[6] but rather that he seeks to contradict an unsworn letter dated November 15, 1994, wherein he stated that plaintiff "definitely cannot return to her former employment." *See* Pl.'s Dep., Exhibit 13. But even assuming that an affidavit can be deemed a sham when contradicting unsworn statements, the court finds that the affidavit and letter are not inherently inconsistent. Although Brown's affidavit may appear contradictory to his earlier letter, the court finds that the two can be read consistently in that Brown's affidavit appears to qualify rather than contradict his prior statement.

Defendants also contend plaintiff's affidavit contradicts her prior deposition testimony, but defendants do not direct the court to a specific portion of plaintiff's deposition testimony. Defendants only indicate that plaintiff had testified previously that she could not work on Dow–UT's production floor because of her condition. In light of defendants' lack of specificity, the court finds that just as Brown's affidavit can be read consistently with his previous statements so too can plaintiff's.

Accordingly, the court finds that defendants' motion to disregard is due to be denied.

C. *Motion to Amend Pre–Trial Contentions or, in the alternative, the Complaint*

■ Before taking up plaintiff's motion to amend the pre–trial order, the court believes it would prove beneficial to review the procedural history of this case. On May 4, 1995, plaintiff filed her complaint alleging, inter alia, a violation of the ADA. Defendants filed a motion for summary judgment on June 14, 1996, and plaintiff filed her response on July 23, 1996. Plaintiff filed a motion on September 30, 1996, requesting leave to amend her complaint out of time. On October 15, 1996, the parties attended a pretrial conference during which the parties reviewed their pre-

---

6. Brown's deposition was taken on October 22, 1996, some three months *after* he prepared his affidavit.

trial contentions. The court entered a pretrial order on October 17, 1996, which stated the parties' contentions and set a trial date of December 2, 1996.

On November 18, 1996, the court entered an order continuing the trial of this case until April 7, 1997, with the clear understanding that the parties would attempt a good faith mediation. Also on November 18, 1996, the court granted plaintiff's motion for leave to amend her complaint with regard to the fraud and suppression claims and extended the dispositive motion deadline for the amended portion of the complaint. On January 15, 1997, plaintiff moved to amend her pretrial contentions, entered in the form of an order on October 17, 1996, or to amend her complaint, filed May 4, 1995, explaining that she sought to clarify the pretrial order by making changes that conform to the evidence and prior contentions of the plaintiff concerning her ADA claim. Defendants, however, have objected to plaintiff's motion.

Rule 16(e) states that "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken." Fed.R.Civ.P. 16(e). Any such order "shall control the subsequent course of action unless modified by a subsequent order." *Id.* An order following a pretrial conference shall be modified only to prevent "manifest injustice." *Id.* Similarly, while a decision to grant leave to amend a complaint is within the sole discretion of the district court, the court's discretion is limited by the mandate that "leave shall be freely given when justice so requires." *See* Fed.R.Civ.P. 15; *Halliburton & Associates Inc. v. Henderson, Few & Co.,* 774 F.2d 441 (11th Cir.1985). Therefore, there must be a substantial reason to deny a motion to amend. *Id.* Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The court finds that justice requires plaintiff's motion to amend be denied.

To qualify for relief under the ADA, a plaintiff must establish that she is a disabled individual. In 42 U.S.C. § 12102(2), "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." In her complaint and pretrial contentions, plaintiff broadly alleged that she is "a qualified individual with a disability pursuant to the provisions of 42 U.S.C. § 12111(8)." Plaintiff did not specify, however, under which theory she was disabled. Plaintiff now seeks to "clarify" which theories of disability upon which she is relying. Essentially, plaintiff wishes to add that she was regarded by defendants as having an impairment that substantially limited one or more major life activities. The court, however, finds that plaintiff has unduly delayed in attempting to amend either the pretrial order or her complaint and that defendants will be unfairly prejudiced by such an amendment.

First, the court notes that the court has already allowed one out of time amendment to plaintiff's complaint. Now, plaintiff again seeks to amend her complaint or pretrial order out of time—this time some six weeks after the case was originally set for trial. As cause, plaintiff argues that she did not realize until mediation on December 20, 1996, that defendants were unaware that she was alleging that defendants regarded her as disabled; however, this rationale does not explain why plaintiff still did not seek to amend her complaint or pretrial order until January 15, 1997, 26 days after the mediation. The court finds such a delay to be unwarranted.

Moreover, the court remains unconvinced that plaintiff's pursuit of the "regarded–as" claim is not an attempt to add a *new* theory which she had not considered previously. Certainly in light of the liberal pleading requirements established by Rule 8 of the Federal Rules of Civil Procedure, it is not dispositive of plaintiff's motion to amend that she failed to state specifically which definition is applicable to her disability claim. Nevertheless, plaintiff's omission of the third prong of the definition of disabled in her response to defendant's motion for summary judgment is more telling. In their brief, defendants ar-

gued they were entitled to summary judgment on the ADA claim because plaintiff was not disabled as the term is defined under the ADA and that plaintiff is not a qualified individual with a disability. *See* Pl.'s Br. at 87, 98. In response, plaintiff *only* argued that she suffers an actual disability which substantially limits her major life activities. Plaintiff did *not* offer the alternative argument that even if she did not have an actual disability, she still met the third definition of disabled, *i.e.*, that she was regarded as having a disability. Such an omission is significant in that it suggests that at the time she was responding to the motion for summary judgment she either did not realize or simply did not plan to rely on the third prong of the definition of disability.

The court finds that plaintiff unduly delayed in amending her pretrial contentions or complaint. To allow an amendment at this eleventh hour would require yet another continuance of this matter so as to allow defendants sufficient time to conduct discovery on this new matter. After weighing the equitable considerations, the court finds that plaintiff's motion to amend her pretrial contentions or her complaint is due to be denied.

D. *Motion for Summary Judgment: ADA Claim*

1. Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### 2. Discussion of ADA Claim

■ The ADA, 42 U.S.C. § 12201, *et seq.*, provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish employment discrimination under the ADA, plaintiff must prove that (1) she has a disability, (2) she is qualified for the position and (3) Dow–UT's termination of her employment constitutes unlawful discrimination. *See Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir.1994). Defendants move for summary judgment on plaintiff's ADA claim, contending that plaintiff is unable to show that she has a disability or that she is qualified for the position. Primarily, defendants argue that plaintiff has been unable to establish that her major life activities, *i.e.*, working, have been substantially impaired by her disability and, alternatively, that even if plaintiff is disabled, she is unable to perform the essential functions of any job at Dow–UT's Montgomery plant, with or without accommodation.

■ The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case. Once a prima facie case has been presented, the burden shifts to the defendant employer to demonstrate that challenged criteria are job related and required by business necessity, and that reasonable accommodation is not possible. *See Jasany v. United States Postal Service*, 755 F.2d 1244, 1249–50 (6th Cir. 1985). As with all discrimination cases, however, the plaintiff bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination because of her disability. *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1536 (N.D.Ala.1995).

#### a. Disabled Person

As described previously, in order to qualify as disabled, plaintiff must either have a physical or mental impairment that substantially limits one or more of plaintiff's major life activities, a record of such an impairment or be regarded as having such an impairment. In this instance, defendants argue there is no material issue of fact regarding plaintiff's substantial impairment of major life activities. An individual is substantially limited if she is:

(I) unable to perform a major life activity that the average person and the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

"If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." 29 C.F.R. § 1630.2(j). "To determine whether a person is substantially limited in a major life activity other than working, we look to whether that person can perform the normal activities of daily living." *Quinley v. State Farm Ins. Corp.*, 1996 WL 544258, *5 (S.D.Ala. June 26, 1996)(quoting *Ray v. Glidden*, 85 F.3d 227 (5th Cir.1996)). Additionally, three factors that "should be considered" when determining whether an impairment substantially limits a major life activity are: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the impairment or long term impact, or the expected perma-

nent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

In the instant action, plaintiff has presented evidence that she has an extreme sensitivity to chemicals, suggestive of multiple chemical sensitivity syndrome, and that she "experiences severe, adverse, physical reactions upon exposures to materials containing formaldehyde and phenol." *See* Brown Aff. at 1–3; *see also* Stewart Dep. at 15–16. Plaintiff currently requires the doors to be closed to her office and bedroom and requires special air ventilators in both her home and her workplace. Pl.'s Dep. at 367–69. Brown has testified that as a result of her multiple chemical sensitivity, plaintiff "will have to be maintained on some type of therapy, coupled with a maintenance/monitoring program, for an indefinite period of time into the future." Brown Aff. at 2. In response to plaintiff's allegations of sensitivity to multiple chemicals, defendants have argued that multiple chemical sensitivity syndrome is generally not recognized as a valid medical condition. However, such an argument "does not terminate the court's inquiry." *See Whillock v. Delta Air Lines, Inc.,* 926 F.Supp. 1555, 1561 (N.D.Ga.1995), *aff'd,* 86 F.3d 1171 (11th Cir.1996)(per curiam). For "[t]he ADA mandates a case by case determination of whether a plaintiff–employee's condition is so severe that it substantially impairs a major life activity." [7] *Id.* (citing generally *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723 (5th Cir.1995)).

Plaintiff has presented evidence that while she was employed at Dow–UT she suffered three allergic reactions which required medical treatment and that she continues and will continue to suffer from such difficulties for some time in the future. *Id.* at 3, 7. Significantly, plaintiff has testified that during the three allergic reactions her respiratory functions were impaired. *See also* Brown Aff. at 3 ("[Plaintiff] was presenting [with] respiratory difficulties....."). In describing the first incident, plaintiff states that her tongue began to swell, she had difficulty swallowing,

she felt a "tightness in [her] chest," and she experienced a "burning sensation" when she inhaled. Pl.'s Dep. at 99–100, 113–14. In response, Dr. Ulmer ("Ulmer"), the primary physician who treats Dow–UT's employees who are injured on the job, reported that plaintiff presented primarily with the dermatological symptoms of a rash and swollen eyes and that his check of plaintiff's lungs showed nothing significant. Ulmer's Dep. at 27, 33–34. Ulmer diagnosed plaintiff as suffering from an "allergic reaction to [an] unknown substance" and prescribed medication to control her allergic reaction. *Id.* at 126–27.

Plaintiff has also testified that during her second allergic reaction she again experienced respiratory difficulties, complaining that she again felt a burning and tightness in her chest area, as if her airway was "closing off," that she was light–headed and faint, and that she began "sinking" to the floor. Pl.'s Dep. at 147, 150–51. Plaintiff was then removed from the plant by wheelchair and taken to Ulmer's office. *Id.* In response, Ulmer again diagnosed an allergy to an unknown substance and described plaintiff's second reaction as primarily pulmonary. Ulmer's Dep. at 86. Ulmer administered medication and prescribed two epinephrine auto–injectors. *Id.* Plaintiff's third reaction was less severe than the two previous incidents. She testified that she began coughing and gagging, but she does not report any breathing difficulties per se. Pl.'s Dep. at 216–17. In response to this third incident, the plant nurse provided plaintiff with medication and plaintiff wore a dust mask for the remainder of her time at the plant. Pl.'s Dep. at 222–224.

Plaintiff's evidence is startlingly similar to that presented by the plaintiff in *Whillock,* 926 F.Supp. 1555. The *Whillock* plaintiff allegedly suffered from multiple chemical sensitivity and presented medical evidence that she was "hypersensitive to a number of chemicals and chemical odors, and exposure to them severely impair[ed] her normal breathing." *Id.* at 1562. Just as in the

---

7. "[T]he determination as to whether allergies to cigarette smoke, or allergies or sensitivities characterized as environmental illness are disabilities covered by the regulation must be made using the same case–by–case analysis that is applied to other physical or mental impairments." *Whillock,* 926 F.Supp. at 1562 (quoting 28 C.F.R. Pt. 35, App. A at 446 (1993)).

instant case, the *Whillock* plaintiff presented evidence that she had suffered a violent reaction to chemical agents in her work place on two separate occasions. *Id.* She reported that she became "weak, dizzy and had difficulty breathing" and that her "throat swelled and closed, and she began jerking and gasping." *Id.* at 1557. The plaintiff was then take by wheelchair to a first aid station where she was administered oxygen. *Id.* The *Whillock* plaintiff experienced a second episode during which she again reported difficulty breathing, dizziness and an inability to stand. *Id.* at 1558. After this second incident, a co-worker assisted plaintiff to the nurse's first aid station where oxygen was once again administered to the plaintiff. *Id.* However, a medical evaluation after the second incident indicated plaintiffs' lungs were clear. *Id.* The district court concluded that such a showing was sufficient to create a triable issue regarding whether the plaintiff had a disability as defined under the ADA. *Id.* at 1563. *But see Robinson v. Global Marine Drilling Co.,* 101 F.3d 35, 37 (5th Cir.1996)(holding that in the case of a plaintiff with asbestosis, "a few instances of shortness of breath while climbing stairs .... do not rise to the level of substantially limiting the major life activity of breathing").

Based on the evidence in the instant case, the court concludes that plaintiff has presented evidence sufficient to create a jury question as to whether her major life activity of breathing has been substantially impaired, as defined under the ADA, by her alleged sensitivity to chemicals, whether it be to formaldehyde or to phenol or to multiple other chemicals.[8] However, just as the *Whillock* court noted in its own decision, the court here also notes that "defendants' evidence may fairly be said to strongly counter certain evidence plaintiff submits on the issue whether she suffers from a disability." *See* 926 F.Supp. at 1562.

Despite the parties' not inconsiderable efforts centering around the issue of whether plaintiff's ability to work has been substantially impaired by her alleged disability, the court finds it unnecessary to reach that issue. *See* 29 C.F.R. § 1630.2(j). In this regard, however, the court has serious reservations as to whether the plaintiff's overall maximum vocational loss of 13%, as determined by the vocational consultant, is sufficient to rise to the level of a substantial impairment which would restrict the plaintiff from a class of jobs or a broad range of jobs in various classes. *See Patrick v. Southern Company Svcs.,* 910 F.Supp. 566, 569–70 (N.D.Ala.)(finding that plaintiff with multiple chemical sensitivity syndrome did not have an impairment which was a substantial limitation to work), *aff'd,* 103 F.3d 149 (11th Cir.1996)(per curiam).

### b. Qualified Individual

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "essential functions" means the fundamental job duties of the employment position. 29 C.F.R. § 1630.2(n)(1). Such provisions "are formulated entirely in the present tense, framing the precise issue as to whether an individual 'can' (not 'will be able to') perform the job with reasonable accommodation." *Cheatwood,* 891 F.Supp. 1528 (quoting *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995)). "Although defendant–employers cannot recast what the essential functions of a job are for ADA purposes, employers do have the right to define the essential functions of a job." *Whillock,* 926 F.Supp. at 1563. In this case, defendants argue that plaintiff has demonstrated an inability to work at Dow–UT's production facility in Montgomery, Alabama, due to her alleged allergy to Epocast, and, consequently, that

8. "The ADA ... [does] not attempt a 'laundry list' of impairments that are 'disabilities.' The determination of whether an individual has a disability is *not necessarily based on the name or diagnosis of the impairment* the person has, but rather on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others, depending on the state of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors." 29 C.F.R. Pt. 1630, App. at 339 (emphasis added).

plaintiff is unable to perform the essential function of working *in* the Montgomery plant. To support their contention, defendants point to the fact that even after they moved plaintiff to the tip caps department, a department which was as far away as possible from the bonding department and the Epocast, plaintiff experienced yet another allergic reaction which required her to leave her work station temporarily. Defendants also rely on plaintiff's deposition testimony and Brown's letter, Pl.'s Dep., Ex. 13, to further support their claim that plaintiff was unable to work in the Dow–UT Montgomery facility. Specifically, they cite to plaintiff's statement that she would not go back to work at Dow–UT because she is afraid of having another allergic reaction, *see* Pl.'s Dep. at 398–99, and Brown's letter stating that plaintiff "definitely" could not "return to her former employment." Pl.'s Dep., Ex. 13.

Plaintiff, however, disputes defendants' contentions and asserts that she is able to perform the essential functions of the job with accommodation.[9] First, plaintiff submits an affidavit wherein she explains that she would not go back to work at Dow–UT under the same circumstances which existed when she was terminated. Pl.'s Aff. at 5. Second, plaintiff presents the affidavit of Brown, wherein he states that plaintiff could conceivably return to work at Dow–UT, provided she "were assigned to a work station which were [sic] not insulated from the offending agents, or the spread of dust generated by the drilling or sanding of component parts containing such agents, special precautions would have to be taken to insure no

contact with her face or skin and she should be required, at all times, to utilize a fitted respirator." Brown Aff. at 7. Brown's testimony is further bolstered by his observation during his deposition testimony, taken after he prepared his affidavit, that medication, *i.e.*, benadryl, appeared capable of managing plaintiff's condition so that she could perform the essential functions of her job in the tip caps department. Brown Dep. at 193–94. The significance of Brown's testimony is somewhat tempered, however, by his admission that he is unsure whether a fitted respirator would suffice as a reasonable accommodation for plaintiff's alleged condition. *Id.* at 190. Brown's equivocations notwithstanding, the court finds that such testimony creates a genuine issue of material fact as to whether plaintiff is able to perform the essential functions of her job.[10]

Accordingly, the court finds that defendant's motion for summary judgment as to plaintiff's ADA claim is due to be denied.

## CONCLUSION

Based on the foregoing, the following is CONSIDERED and ORDERED:

(1) defendants' motion to strike a portion of the affidavit of Andrew M. Brown, M.D., be and the same is hereby GRANTED;

(2) defendants' motion to disregard the affidavits of Andrew M. Brown, M.D., and plaintiff, be and the same is hereby DENIED;

---

9. Neither party clearly specifies whether the job in question is the position in bonding department or the tip caps department. However, such a determination is unnecessary at this point as defendants appear to be arguing plaintiff is unable to perform the essential function of *any* job at Dow–UT's Montgomery facility.

10. In their supplemental motion for summary judgment, defendants attempt to advance a new ground to defeat plaintiff's ADA claim. Specifically, defendants contend that plaintiff has failed to establish that she requested a reasonable accommodation or even that she could have been accommodated. Although defendants' "new" contention is not entitled to consideration, either by grace or right, the court has reviewed the contention out of an abundance of caution and finds that it does not alter the court's decision to

deny defendant's motion for summary judgment on plaintiff's ADA claim. First, the court notes that plaintiff did, in effect, request accommodation when she demanded to be removed from the bonding department. Second, when plaintiff appeared to be suffering an allergic reaction, she took steps to accommodate herself by use of medication and a dust mask. Third, due to plaintiff's somewhat abrupt termination, she was not given an opportunity to engage in any further colloquy regarding the need for reasonable accommodation. Finally, as the court has previously noted, the plaintiff has presented sufficient evidence to create a triable issue regarding whether her allergic condition might be reasonably accommodated with a respirator or with medication and a dust mask.

(3) plaintiff's motion to amend her pretrial contentions or, in the alternative, to amend her complaint be and the same is hereby DENIED; and

(4) defendants' motion for summary judgment as to plaintiff's ADA claim be and the same is hereby DENIED.

The Clerk of the Court is directed to transmit the foregoing opinion and order to all parties by facsimile and United States mail.